Oral argument not to exceed 15 minutes per side. Mark Vollman for the appellant. Good morning Judge. Good morning. You may proceed. Thank you. Thank you. Good morning Your Honors. May it please the Court. My name is Mark Vollman. I'm an Assistant County Prosecutor for Hamilton County, Ohio. And I represent the five Deputy County Sheriffs who are the defendants in this case who appeal to this court the decision of the trial court denying them qualified immunity in this particular matter. As we know, this is an excessive use of force case that involves an altercation that occurred on October 20, 2009. It occurred in the eastern area of Hamilton County out on Clough Pike. It's a two lane road and it happened at 1 o'clock in the morning. And on that particular evening, Mr. Harmon suffered a diabetic situation. He was a lifetime diabetic and he hadn't taken his appropriate medication. And he encountered a Deputy Sheriff and an altercation eventually took place five or ten minutes later after his vehicle was stopped. It's interesting in this case that there's no dispute on the facts because Mr. Harmon was impaired. And he has no recollection of this night. There's five deputies and actually it's four deputies that arrived at the scene. There's one sergeant, a Sergeant Stuckey, who's involved and she's alleged to have approved the filing of criminal charges against Mr. Harmon. But based on his actions that night, these deputies had no alternative but to stop his car. He was in a life-threatening situation. He was driving a 2006, I believe, Ford Expedition. Ford Expedition. It's an SUV. It's the biggest car, passenger car, I think Ford makes. He's driving and there's agreement on the facts and even the plaintiffs agree. That's where my concern lies on this. This is an interlocutory appeal. Yes, ma'am. And so you have to concede the facts in the light most favorable to the plaintiffs as found by the District Court in its order for this panel to have jurisdiction. In looking at your argument, it seems very clear to me that your statement of facts do not concede what the plaintiff has pled. Nor do they concede what an independent witness, Officer Sanger of the Highway Patrol saw and testified to. Nor the investigation that occurred afterwards. I'm having trouble seeing jurisdiction because you do not concede the facts in the light most favorable to the plaintiff. Well, as far as the facts, the facts, Judge, they come from the deputies. And the trial court... But you have other present witnesses that tell a different story. So why is that not a dispute of material? Trooper Sanger, for instance, he does not tell a different story. He is in lockstep with our fellows on the facts. Now, there is one thing he disagrees with in the record. He disagrees that the deputy should have been tasing Mr. Harmon when he was prone on the ground. But other than that, he agrees with the use of force. Is that enough to deprive this panel of jurisdiction? No, ma'am. Why not? There is no dispute between Trooper Sanger and the deputies about what happened. It's his opinion... I'm struggling with that. If he states it as his opinion, then it is an opinion of what the fact was that he visually saw with his eyes. And if your clients say, no, that's not the way it was, isn't that the classic dispute of material fact? He doesn't dispute how it happened. He disputes that they should have done that. Was it necessary or not? Yes, yes. He doesn't dispute that that's how it happened. Well, he disputes that their efforts to remove Harmon from the car and their claim that he was physically struggling with them, he disputes that. He disputes whether it was necessary to tase him. He disputes whether he, in fact, could refuse to be handcuffed behind him while you had him on the ground because he did not remove his arm from under his body. He disputes it so much that he says, I went over there and helped them with his arm because they were... well, it actually ended up dislocated. But he disputed that he was resisting. Isn't that the essence of a dispute of material fact? What he's disputing, Judge, he's disputing the characterization of my deputies that this fellow was struggling. He's saying he wasn't struggling, but they're not disputing that Mr. Harmon was laying prone on the ground with his hands under his body and wasn't releasing his arms. Our trooper Sanger is disputing the... What is necessary to understand the propriety of the actions of the officers? What is necessary is what occurred. Correct. So you have both officers, Sangers, of highway patrol officers' testimony. Right. He is a former. But he was a highway patrol officer then. He actually has been fired for threatening a girlfriend with his firearm. This is not appropriate to talk about here as a counselor. No, ma'am. But that's not the issue. Okay. And then you have the internal investigation trying to determine what factually occurred. And that report says it appears that the door was not in fact locked and the window was broken by the police officer unnecessarily. That it challenges the use of the tasers. It challenges the physical struggle to get him out of the car by saying, in fact, he couldn't get out because he was still in his seat belt. And your officer had to cut the seat belt off. How are all those things not material? They're not facts. They're the opinions of our internal investigators and the opinions of the trooper that they didn't have to break the window. Well, everybody agrees they broke the window. The man's driving an SUV. Goes to light most favorable, does it not? But still, it doesn't establish any facts. It's their opinions of our investigators and their opinions of the trooper that they shouldn't have tased him that much. Or they shouldn't have been so rough with him or something to that effect. That's his opinion. What is this case about? The case is about excessive force, objective reasonableness, the severity of the crime, the danger to others. It's about objective reasonableness. Yes, ma'am. Isn't what objectively occurred at that location that evening the very issue? Absolutely. And if you have a highway patrol officer and an investigatory report that says this happened and your officer said, oh, no, it didn't, we saw something different, or this was not what occurred, then why don't you have the classic dispute of material fact that deprives us of jurisdiction? Because they all agree on the facts. They agree that he was driving erratically. They agree that he wouldn't stop. They agree he evaded a roadblock that had lights and sirens. At what time does the excessive force claim is it initiated factually? After all of those things. After all the, Graham v. Connor, the totality of the circumstances. These officers all know this fellow has evaded a roadblock. He's run off the road. He was stopped. He stopped at one point. They went up to the car with their weapons drawn. He looked at them, looked around. He took off. So then he stops 200 yards down the road, stops again. Okay, so they approach the car. They're screaming with weapons drawn, get out of the car, get out. How long? How long did they order him to get out of the car? The witnesses say 20 seconds. Okay. He's sitting behind an SUV with the motor running, a three-ton automobile, and he's looking at them, and they're screaming at him with their guns drawn, get out of the car, and he just looks at them. Split-second decisions. Objective reasonableness protects all but the plainly incompetent or those willing to violate the law. They admit they had to get him out of that car at that moment. What are they going to do, write a letter, write a sign? What can they do? He's already fled. Nobody agrees on the 20 seconds. We're still on the question of whether or not there is factual agreement sufficient to allow this court to have jurisdiction. Everything I'm saying is agreed upon by all the officers and the state trooper. Those are the only eyewitnesses at the scene. The judge in her ruling adopted the factual statements of these fellas that were contained in the internal report for the purposes of summary judgment. And she says this case is ripe for summary judgment. Now, a couple things I disagree with the court's opinion on page 15 is she says this man was not evading arrest, or a reasonable interpretation by the jury could be that this man was not evading arrest. Evading arrest, this was a five-minute car chase where he ran off the road into the grass. He committed 10 traffic violations. Now, granted, he's having a diabetic situation. Something of his own doing, I guess. He didn't take his proper medicine, enough of the insulin or whatever, and that was the problem. But it's 1 o'clock in the morning. He's driving all over the road. He evades a roadblock. And the court says a reasonable jury could interpret the evidence to say that he wasn't trying to evade the police. That's the basis of her denying qualified immunity, and I disagree with that interpretation of the court. Secondly, she says that when he's sitting in the SUV that's running and they break the window, that shouldn't have been done. They should have given him he was effectively neutralized. And that term comes from cases where someone has been arrested and cuffed and searched and all that. What are they to do? Mr. Harmon is sitting in his SUV. It's a weapon. Had he not encountered this policeman that night to get him to stop, it's possible, potential, likely, maybe, that he would either have killed himself or killed someone else. I had a case with a lawyer many years ago, a very smart man in bankruptcy, and that Monday we showed up for the hearing and they said he's dead. He was a diabetic, and over the weekend he drove the wrong way on an interstate ramp and was killed. So this was a life-and-death situation, split-second decisions, severity of the crime. Time's up, counsel. Oh, I'm sorry. This is a little beyond the merits, so we'll hear from you on your rebuttal. Very good. Thank you. Thank you, Your Honors. May it please the Court, my name is Micah Camerson. It's my privilege to represent the Appalese in this case, John and Stephanie Harmon. I'm joined by my colleagues Timothy Burke, Daniel McCarthy, and Daryl Payne as well. Judge Stranch, I think the question that you asked about the genuine issue of material facts in this case is exactly where this analysis should begin. And the reality, I was floored to hear that Trooper Sanger, they agree with everything Trooper Sanger said because that evening, immediately after the incident occurred, Trooper Sanger reported to his immediate supervisor that the officers that were there behaved excessively and acted with excessive force. So to say they all agree must mean that the county's position now is that they acted excessively because that's what Trooper Sanger, an eyewitness to much of the encounter, said while he was there. There's no dispute in this. We concede in the briefs that Mr. Harmon's vehicle should have been stopped. We're all fortunate that he was able to stop the vehicle without any sort of issue, without any harm to anyone. This dispute has to do with whether or not the officers behaved excessively after Mr. Harmon stopped his vehicle. I'd like to point out a couple of things. It's referred to as a chase, but I think the last piece of it Let's start with jurisdiction, though, because looking at your brief, it's unclear to me what position do you take on whether or not this panel has jurisdiction? Well, there's tons of genuine issues of material fact in this case. Do you think this panel has jurisdiction? What is your client's position? I think that I can't tell. I guess there would be jurisdiction if viewing it most favorably. Otherwise agree that this court has jurisdiction over the current interlocutory appeals. So you agree that this panel has jurisdiction. Yes, when viewing The state thinks so, and you do. Correct. When viewing the facts construed most favorably to my client, which is ignored in the brief of the county, they They aren't arguing it that way. But you're saying we have jurisdiction so long as this panel That's correct, Your Honor. looks at it in the light most favorable. We can still decide the qualified immunity issue. That's correct, Your Honor. And in looking at this, again, there's no dispute that the vehicle should have been stopped. We're fortunate Mr. Harmon was able to stop the vehicle. But just about everything there, when viewing the facts most favorably to my client, shows excessive force. The 22nd comment that was made I'm struggling with the jurisdictional issue because the key in federal court jurisdiction, you have to have a final order or you can't get to the next level. The law excludes, has a limited narrow exception for interlocutory appeals on qualified immunity. And in order to access that, the plaintiff's facts must be conceded by the defendant. And that's a practical thing. That's because you have the trial court who's already heard and seen and understands the evidence, has made determinations about whether there's a dispute of material fact in not granting summary judgment and in saying this would proceed to trial. So this court does not want to assume jurisdiction unnecessarily if it might be resolved by the trial itself. Hence the narrowness of that jurisdictional grant. If, in fact, we don't have jurisdiction, then the case resides in the hands of the trial court. I'm not saying that we have jurisdiction. It seems to me that the goal is to allow a complete resolution of the case so that it only comes up to us when there is true finality. And in that situation, don't you get what you want? You get a trial. I agree with you, Your Honor. I guess the issue I have a hard time trying to understand from the county's brief is whether or not they have conceded the facts. I don't believe that they have. I think that they would need to in order for there to be jurisdiction. There are cases where there are slight variations, but we have to go to the facts that matter. And they claim they have. Well, I disagree with that. And I think to ignore Trooper Sanger, who is an eyewitness and who immediately that evening reported that there was excessive force use, to ignore that one of the own officers involved in the scene had to be removed. The counsel makes the point that that isn't a fact. That is an opinion. His take on what he saw differs, but he doesn't dispute what took place. Well, there's lots of disputes about what did take place. And much of what the three officers there that evening said, their own investigators, this is of the Hamilton County Sheriff's Office, not our experts, doubted the credibility of what they said that evening. So I think when you've got a situation where it's to be credibility, that's something different, isn't it? Absolutely. So help me understand. It appears to me that you think that they have not conceded the facts in the light most favorable to plaintiffs, and I think clearly from their briefing they have not, which would deprive us of jurisdiction. But in the event we take jurisdiction, you want to make your arguments. Is that the deal? And that's exactly correct of the briefing. I think page five of our brief is almost an entire page of all the places where we don't believe they conceded the facts most favorably to us. But to address the merits, if the court will allow, I think the judge's decision was well supported by the facts, well supported by Sixth Circuit law here, and there's just a few items I would like to discuss for that. When you look at the excessive force claim first, there's a lot of briefing back and forth about the Eldridge decision and the value of unpublished opinion. But the Goodwin case addresses this pretty thoroughly. Judge Schranch and Judge Keith, your decision in Goodwin. And I think it's important to look at the Goodwin case discusses from 2005. It has been clearly established that if you're not actively resisting, that you have a right to not be tased. The Goodwin case also discusses being tased gratuitously, which I think is also a matter in this case when you've got a disputed fact. I'll acknowledge sometime, but somewhere between six and eight tasings of my client. So whether or not it's clearly established when you're not actively resisting, I think the Goodwin decision definitively resolves. Very recently there's a case from the Sixth Circuit as well, Kent v. Oakland County, that also discusses that and says it's been clearly established, you're right not to be tased when you're actively resisting. There are two cases I look to to sort of show what the guideposts are of what's active resistance with an incapacitated driver in his car, which is running on the side of the road. There's the Eldridge case and there is the Foos case, Foos v. Delaware. And in those two cases, in Eldridge, there's two minutes of commands, there's noncompliance, there is numerous warnings, and only after two minutes of numerous warnings did they then tase him. I believe he was tased once or twice in Eldridge. In the Foos case, the individual who was behind the vehicle was flooring the accelerator, the wheels were rotating quickly, there was a thought that the car could drive off, he was shaking violently and the officers believed he was trying to dislodge the car, and in that instance, after five minutes of commands, the taser was used. And Eldridge was not active resistance, Foos was active resistance, and much of the Eldridge decision talks about how the officers were the aggressors, not the individual. So we have what is active resistance and what is not active resistance in somewhat similar situations to Mr. Harmon. Two minutes, five minutes, violently shaking the car, sitting there passively, with the facts construed most favorably to my client. Mr. Harmon was sitting there with his hands in his lap, not making any noise. The 20 seconds that was thrown out wasn't actually 20 seconds of commands. In Judge DeLotte's opinion, it cites 20 seconds from the time his vehicle moved two miles an hour, a couple hundred feet, to the time the officers got out of the car, may or may not have checked whether or not the vehicle was unlocked, attempted to smash the window without success, did smash the window with success, and applied the taser for the first time. That whole window was 20 seconds. It was not 20 seconds of just commands. So when you look at this compared to Eldridge, the behavior was far more aggressive. The tasing was far more excessive. He was tased between six and eight times, which is in excess of what county policy says, far more than what happened in Eldridge. So I think there's clear cases on what is and what is not active resistance. And my client's behavior, with the facts construed most favorably to him, was him sitting there with his hands in his lap, not speaking, until glass shattered all over his face. And so that really was what began any type of issue. It was the officer's aggression and excessive force there. And there are other cases where reasonable officers behave differently and in some instances achieved a different result. So I think that's the most important issue to review. In the excessive force case, I think Judge DeLocq got it right, that it's been clearly established when you're not actively resisting that you have a right to not be tased excessively. You also have a right to not be tased gratuitously, as clearly outlined in Goodwin. Those have been clearly established. The facts of Eldridge occurred about four months before what happened to John Harmon. So if it was clearly established in Eldridge, it was clearly established when it occurred to John Harmon. So that's generally what I'd like to say about the excessive force claim. The other two, the false arrest and malicious prosecution, I think Judge DeLocq, in the opinion, did a very nice job talking about how this is a question of probable cause. And probable cause is typically to be decided by a jury, unless it can only be construed one way. And she says, pretty simply and correctly, that from learning that Mr. Harmon is a diabetic and was experiencing a hypoglycemic episode, everything that occurred thereafter, a jury could find that there was not probable cause for those actions. Mr. Harmon continued to be held in handcuffs while he was getting medical care. After they learned he was a diabetic, experiencing hypoglycemic shock. In fact, he was denied the ability to use the restroom and urinated himself because he wasn't allowed to use the restroom because he was being handcuffed still, still under arrest. He then had to go to the Justice Center and be processed, became a bail defendant. And only after that were the charges dropped. So I think Judge DeLocq is exactly correct that a jury, a reasonable jury could find that there was not probable cause for the arrest or the prosecution that took place. Everything following learning that Mr. Harmon was a diabetic who was experiencing hypoglycemic shock. And I think that's critically important to this matter as well. As we've discussed, this case is filled with genuine issues of material fact. And I think the briefing from the county tries to maybe overlook the fact that their own officers, their own individuals said that excessive force was used. An eyewitness says excessive force was used. But the facts and the law all support this continuing to trial. So unless there are any further questions for me, I'll take a seat. Thank you. Yes, sir. Ma'am, thanks. In regards to the county's internal report, the county, when they do this internal investigation, they're looking for violations of their rules and regs. They're not looking for a violation of the United States Constitution. And what they did find was that he was tased too many times. So I think Mr. Camrus wasn't exactly right. He was tased seven times. And the regulations say he should only be tased five times. But a number of those tasings, number one, electronically, they know they didn't work because he had a leather coat. And the other thing is that it's a regulation. That's not a constitutional violation. There's cases all over the Sixth Circuit where someone's been tased 20 times and it's not excessive. When he's being tased, he's still not under control. You know, I don't understand this business that this fellow for five minutes is in a car chase and evades a roadblock, and then he pulls over and he sees guns pointed at him, and they say, get out of the car. He takes off again. Then he goes 200 yards down the road and stops again. They all get out. Why do they have to wait 20 seconds? Why do they have to say anything? They know this man. They can't divine that he's having an epilepsy. Hindsight affects everybody's view here. Yeah. We know the gentleman was not a lawbreaker. We now know that, but the officers at the time didn't. Right. And there's no requirement that this be a voluntary thing on Mr. Harmon's behalf. Someone affected by a diabetic situation can kill someone just like someone that's intoxicated. So why do they have to? Aren't all those questions why we have a jury of your peers to make those determinations? And isn't that the issue before us? Judge Stranz. Do we need to undertake that or whether it needs to go back down so that a jury of his peers can determine whether there was improper conduct on the part of the officers? All these facts are admitted, and there's no dispute because Mr. Harmon, he had, okay, Trooper Sanger. McKenna tells us, the McKenna case tells us very clearly that guy was having a seizure and didn't remember anything, and the court found disputes of material. Trooper Sanger goes to the district and says, I think he behaved excessively. Well, that's his opinion. That's not, boy, he tased them. I think your better point that you're seeking to make, there is an absolute reason why matters that are, if the law is established, we take it away from juries because we have qualified immunity so that people, officers, don't have to go through trial. Cox, one of the deputies, the fellow who actually pulled his arm from under his body and around the back and dislocated his elbow, the only injury that he suffered, the trial court found Deputy Cox not liable of excessive force. And he's out of the case. And that was an appeal. That's the law of the case. The deputy that caused the injury is out of the case. Real quick, I wanted to talk about this, what is it? We'll make it real quick. Yes, I know, Judge. Active resistance versus the passive resistance, Eldridge, Goodwin, this and that. I don't think it's clear in the circuit about whether, if a fellow is standing there with a knife in the middle of the street, and you say drop the knife and put your hands up, and he doesn't do it, that's mere noncompliance. What do you do? Do you wait until he falls asleep? They have to do something. And Mr. Harmon is sitting behind this three-ton car. He's totally unresponsive, uncooperative, driving this deadly car. Noncompliant with many officers, so that's your point. Yes, ma'am. And Eldridge, real quick, Eldridge's car was barricaded by the other cars, not like this situation where all he does is have to mash on the gas and off he goes 50 miles an hour down the roadway. They were blocked in, and, of course, Eldridge sat back and forth about whether it was published or whether it was authoritative and what have you. We appreciate your arguments. Thank you. Gentlemen, as you've heard, we'll consider your case carefully, and you will receive an opinion. Thank you.